[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections,* Slip Opinion No. 2017-Ohio-8167.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8167

THE STATE EX REL. TAM O'SHANTER COMPANY ET AL. *v.* STARK COUNTY BOARD OF ELECTIONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections,* Slip Opinion No. 2017-Ohio-8167.]

*Elections—R.C. 519.12(H)—Zoning-referendum-petition requirements—Claim for writ of mandamus dismissed—Claim for writ of prohibition denied.*

(No. 2017-1285—Submitted October 9, 2017—Decided October 12, 2017.)

IN MANDAMUS and PROHIBITION.

————————————

**Per Curiam.**

{¶ 1} The issue in this original action seeking writs of mandamus and prohibition is whether a petition for a zoning referendum complied with R.C. 519.12(H). Relators contend that it did not comply, because it did not reference the name of the property owner. Based on this omission, they argue, the referendum should be removed from the November 7, 2017 ballot. For the reasons below, we dismiss the mandamus claim and deny the claim for a writ of prohibition. We also deny relators' motion to strike.

**Facts**

{¶ 2}   The zoning-amendment proposal at issue involves approximately 62 acres of land in Jackson Township, Stark County, which is owned by relator Tam O'Shanter Company.  The land, along with more than 200 additional adjacent acres, has been used as a golf course since the 1920s.

{¶ 3}   In April 2017, Tam O'Shanter filed an application with the Jackson Township Zoning Commission, seeking to rezone the land from "R-R Rural Residential District" to "B-3 Commercial Business District."   The copy of the zoning-amendment application submitted as evidence identifies the property owner as "Tam O'Shanter Company," but it does not indicate that a number or a title was assigned to the application.

{¶ 4}   The Stark County Regional Planning Commission and the Jackson Township Zoning Commission both recommended approval of the proposed zoning change, with a minor modification.   In a public-hearing notice, the zoning commission referred to the proposed zoning amendment as "Amendment 630-17" and identified "Tam O'Shanter Company" as the property owner.

{¶ 5}   Based on the recommendations of the planning commission and the zoning commission, the Jackson Township Board of Trustees approved Tam O'Shanter's proposed zoning change, with the minor revision, in June 2017.  In its public-hearing notices, the board of trustees referred to the proposed amendment as "Amendment 630-17" and identified "Tam O'Shanter Company" as the property owner.  At the board-of-trustees hearing, the board president and the township law director referred to the matter as "Amendment 630-17."  In the notice of its decision, which was the official record of the zoning amendment, the board of trustees again identified the amendment as "Amendment #630-17."  The name "Tam O'Shanter" appears once on the notice, under the words "Property Owner."

{¶ 6}   After the board of trustees passed the zoning amendment, the requisite number of Jackson Township electors signed a referendum petition to place the

amendment on the November 7, 2017 ballot. Referendum petitions for township zoning amendments are governed by R.C. 519.12(H), which provides:

> Each part of this petition shall contain the number and the full and correct title, if any, of the zoning amendment resolution, motion, or application, furnishing the name by which the amendment is known and a brief summary of its contents.

**{¶ 7}** The petition at issue here identified the zoning-amendment proposal as "Jackson Township Zoning Amendment 630-17." The name "Tam O'Shanter" does not appear on the petition or in the language that would appear on the November 7 ballot. Respondent, Stark County Board of Elections, certified the petition and finalized the ballot language in August 2017.

**{¶ 8}** On August 25, 2017, Tam O'Shanter and relator Charles H. Bennell[1] (collectively, "relators") filed a protest against the referendum petition under R.C. 3501.39. Relators argued that the petition was invalid under R.C. 519.12(H) because it did not include "the full and correct title," "the name by which the amendment is known," or an adequate summary of the amendment's contents. According to relators, each of these statutory elements required the petition to include the name "Tam O'Shanter." On September 13, after a hearing, the board of elections denied the protest.

**{¶ 9}** Relators filed this action on September 14.

---

[1] Bennell is Tam O'Shanter's president and one of its owners.

## Analysis

*Motion to strike*

**{¶ 10}** In its merit brief, the board of elections asserts several times that a map of the property at issue was attached to the referendum part-petitions circulated to electors. Relators, arguing that this assertion is factually incorrect, move to strike the statements from the board's brief. They also seek leave to submit two affidavits that they say prove that maps were not attached to the part-petitions. In addition, relators move to strike two exhibits submitted by the board as evidence—because they were not part of the record before the board when it considered the protest— and the board's arguments concerning unrelated property in another county.

**{¶ 11}** The only legal authority relators cite in support of their motion is *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, in which we held that in an original action filed in this court, a board of elections cannot support its decision with "evidence that was not introduced at the hearing and upon which it did not rely." *Id*. at ¶ 40. *Stoll*, which did not involve a motion to strike, does not support relators' position; it merely explains that evidence that was not presented to a board of elections is not relevant to whether the board abused its discretion or clearly disregarded applicable law. Because we are capable of determining questions of relevance and assigning appropriate weight without striking evidence or arguments, we deny relators' motion to strike.

*Mandamus*

**{¶ 12}** "In general, if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction." *State ex rel. Grendell v. Davidson*, 86 Ohio St.3d 629, 634, 716 N.E.2d 704 (1999).

{¶ 13} Here, relators claim that they are entitled to a writ of mandamus to compel the board of elections to find the referendum petition insufficient and to reject it under R.C. 3501.39. Although relators frame their mandamus request in terms of *compelling* the board to discharge affirmative duties, their true objectives are a declaratory judgment (that the referendum petition is insufficient) and a prohibitory injunction (to prevent the referendum from being placed on the ballot). *See State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 20-22. We therefore dismiss relators' mandamus claim for lack of jurisdiction.

*Prohibition*

{¶ 14} Relators also seek a writ of prohibition to prevent the board of elections from submitting the proposed zoning amendment to the Jackson Township electorate. To prevail on this claim, relators must establish that the board has exercised or is about to exercise quasi-judicial power, that the exercise of that power is unauthorized by law, and that denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 29.

{¶ 15} The first and third requirements are satisfied in this case. The board of elections exercised quasi-judicial authority by denying relators' protest following an R.C. 3501.39 hearing that included sworn testimony. *See Christy v. Summit Cty. Bd. of Elections*, 77 Ohio St.3d 35, 37, 671 N.E.2d 1 (1996). Because the election has not yet occurred, relief in prohibition still can prevent the referendum from being placed on the ballot, even though the board already has exercised its quasi-judicial power by denying the protest. *Tatman v. Fairfield Cty. Bd. of Elections,* 102 Ohio St.3d 425, 2004-Ohio-3701, 811 N.E.2d 1130, ¶ 14. In addition, because of the close proximity of the election, relators lack an adequate

remedy in the ordinary course of law. *See State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections*, 72 Ohio St.3d 289, 292, 649 N.E.2d 1205 (1995).

**{¶ 16}** The dispositive issue in this case, therefore, is whether the decision of the board of elections denying relators' protest was authorized by law. On this question, the standard for our review is whether the board "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. Because relators do not argue that fraud or corruption occurred, we must decide whether the board abused its discretion or clearly disregarded applicable law. " 'An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude.' " *State ex rel. Hamilton County Bd. of Commrs. v. State Emp. Relations Bd.,* 102 Ohio St.3d 344, 2004-Ohio-3122, 810 N.E.2d 949, ¶ 17, quoting *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

R.C. 519.12

**{¶ 17}** Relators argue that the referendum petition was defective because it did not comply with R.C. 519.12(H). "In interpreting R.C. 519.12(H), our paramount concern is legislative intent." *State ex rel. Gemienhardt v. Delaware Cty. Bd. of Elections*, 109 Ohio St.3d 212, 2006-Ohio-1666, 846 N.E.2d 1223, ¶ 32, citing *State ex rel. Asti v. Ohio Dept. of Youth Servs.,* 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 22. " 'To discern this intent, we first consider the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage.' " *Id*., quoting *Choices for South-Western City Schools,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, at ¶ 40. When interpreting statutory language, "[w]e will not add a requirement that does not exist in the statute." *State ex rel. Columbia Res., Ltd. v. Lorain Cty. Bd. of Elections*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 32.

{¶ 18} To understand the language of R.C. 519.12(H), it first is necessary to examine the methods by which township zoning amendments may be proposed under R.C. 519.12. R.C. 519.12(A)(1) provides that amendments to a township zoning resolution may be initiated in one of three ways, depending on who proposes the change: "[1] by *motion* of the township zoning commission, [2] by the passage of a *resolution* by the board of township trustees, or [3] by the filing of an *application* by one or more of the owners or lessees of property within the area proposed to be changed or affected by the proposed amendment with the township zoning commission." (Emphasis added.) R.C. 519.12(H) refers to each of these three methods:

> Each part of [a referendum] petition shall contain the number and the full and correct title, if any, of the zoning amendment resolution, motion, or application, furnishing the name by which the amendment is known and a brief summary of its contents.

{¶ 19} Thus, in a case involving a zoning-amendment application by a property owner (as in this case), the statute imposes four distinct requirements concerning the content of a referendum petition. First, the petition must "contain the number * * * of the zoning amendment * * * application." Second, it must "contain * * * the full and correct title, if any, of the zoning amendment * * * application." Third, it must "furnish[] the name by which the amendment is known." And last, it must "furnish[] * * * a brief summary of" the contents of the zoning amendment. *See State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections*, 80 Ohio St.3d 176, 179, 685 N.E.2d 502 (1997) (clarifying that "brief summary of its contents" refers to the proposed zoning amendment passed by the township trustees).

**{¶ 20}** Relators have not made the first requirement an issue in this case, but they do challenge the sufficiency of the petition with respect to the last three. They correctly point out that these requirements, which do not relate merely to the "form" of the petition, must be strictly complied with. *See State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 36.

Relators' interpretation of R.C. 519.12(H)

**{¶ 21}** In recognizing the four requirements of a zoning-referendum petition created under this portion of R.C. 519.12(H), we reject relators' reading of the statutory language. Relators contend that the phrase " 'furnishing the name by which the amendment is known' modifies everything that comes before it. Thus, if the zoning amendment's 'resolution, motion, or application' has a 'name by which [it] is known,' then it must be 'furnish[ed]' in the petition." This reading of the statute has three flaws.

**{¶ 22}** First, for relators to be correct, there would have to be a comma after "known" to indicate that the phrase "furnishing the name by which the amendment is known" modifies what comes before it.

**{¶ 23}** Second, relators' reading of the statute does not account for the fact that the "full and correct title" and "furnishing the name" requirements address different objects: a petition must "contain * * * the full and correct title, if any, *of the* zoning amendment *resolution, motion, or application*" (with "zoning amendment" modifying "resolution, motion, or application"), and it must "furnish[] the name by which the *amendment* is known." (Emphasis added.) R.C. 519.12. Thus, in this case, the petition needed to provide "the full and correct title, if any," of *the application* and "furnish[] the name" of *the amendment*.

**{¶ 24}** Finally, even if we were to disregard these grammatical obstacles, relators invite the conclusion that the requirement to "furnish[] the name" is redundant to the requirement to "contain * * * the full and correct title," because

8

they do not explain how the requirements differ in any material way. *See E. Ohio Gas Co. v. Pub. Util. Comm.*, 39 Ohio St.3d 295, 299, 530 N.E.2d 875 (1988) ("words in statutes should not be construed to be redundant, nor should any words be ignored").

"[T]he full and correct title, if any, of the zoning

amendment * * * application"

{¶ 25} We must determine whether the board of elections abused its discretion or misapplied the law when it found that the referendum petition complied with R.C. 519.12(H)'s full-and-correct-title requirement. On this question, because R.C. 519.12(H) refers to the title of *the application*, we must examine the application Tam O'Shanter filed with the Jackson Township Zoning Commission.

{¶ 26} Tam O'Shanter's application consisted of a completed, one-page form, two pages explaining Jackson Township's amendment procedure, and four exhibits.[2] The top of the one-page form identifies the document as "REQUEST FOR MAP AMENDMENT OF JACKSON TOWNSHIP ZONING RESOLUTION." (Capitalization sic.) Immediately below those words are lines for "Date Filed," "No.," and "Application No." On the copy of the application relators submitted as evidence, each of these lines is blank. Below that, "Tam O'Shanter Company" is listed under "Property Owner(s)," and "Terry A. Moore, Esq." is listed under "Applicant(s) or Agent." The form did not request, and Tam O'Shanter's application did not provide, a title for the application.

{¶ 27} By including the words "if any" in relation to R.C. 519.12(H)'s full-and-correct-title requirement, the General Assembly allowed for the possibility that a township-zoning-amendment proposal might not have a formal title. Because Tam O'Shanter's application includes no discernable title, no title could be

---

[2] The exhibits provide the property's legal description, the site plan, Tam O'Shanter's reasons for the proposal, and a list of adjoining property owners.

included in the referendum petition. We conclude, therefore, that the board of elections did not abuse its discretion in finding that the petition was not deficient with respect to this requirement.

{¶ 28} In reaching this conclusion, we distinguish the cases on which relators rely and in which we emphasized the importance of providing the title of the proposed measure in a referendum petition. In those cases, which involved statutes other than R.C. 519.12 that do not include the "if any" language, there was no dispute over whether the zoning proposal at issue had a title. *See State ex rel. Becker v. Eastlake*, 93 Ohio St.3d 502, 506-507, 756 N.E.2d 1228 (2001) (involving R.C. 731.31); *State ex rel. Esch v. Lake Cty. Bd. of Elections*, 61 Ohio St.3d 595, 597, 575 N.E.2d 835 (1991) (involving R.C. 731.31); *State ex rel. Burech v. Belmont Cty. Bd. of Elections*, 19 Ohio St.3d 154, 155-156, 484 N.E.2d 153 (1985) (involving R.C. 305.32).

"[T]he name by which the amendment is known"

{¶ 29} We next must determine whether the board of elections abused its discretion or misapplied the law when it found that the referendum petition furnished "the name by which the amendment is known." With respect to this inquiry, relators invite us to examine evidence from numerous sources, including a letter Bennell sent to Jackson Township residents in March 2017 in which he referred to "Tam O'Shanter Golf Course" and identified "Tam O'Shanter Company" as the owner of the property sought to be rezoned; letters authored by relators' attorney that referred to "Tam O'Shanter Company," "Zoning Application filed by Tam O'Shanter," or "Tam O'Shanter's zoning application"; and a transcript of the board-of-trustees public meeting on the proposed rezoning in which participants referred to "Tam O'Shanter." Relators also ask us to consider a photo of a campaign sign against the rezoning that refers to "Tam O'Shanter" and local media coverage, including letters to editors, that referred to "Tam O'Shanter" in various forms.

**{¶ 30}** But nothing in R.C. 519.12(H) suggests that a board of elections (or by extension this court) should consider this type of evidence to determine "the name by which [a zoning] amendment is known." Indeed, this type of evidence, along with the statute's use of the passive voice, begs the question: known *by whom*?

**{¶ 31}** The statutory language does not clearly answer this question. It is possible that the statute refers to the name by which the zoning amendment is known *to the applicant* or *to electors* (thus making relevant the evidence relators submitted), but it is also possible that it refers to the name by which the amendment is known *to the entity that approved the amendment—the township board of trustees*. We reject the former interpretation as unworkable; it still leaves open questions regarding how to decide whose name for the amendment should prevail. We find it unlikely that the General Assembly intended for boards of elections and courts to determine how a zoning amendment is colloquially known to the general public. The better approach is to examine evidence that shows how the township board of trustees—the promulgating entity—identified the zoning amendment. This approach is supported by the longstanding rule of construction that favors the workable application of statutory provisions. *See Prosen v. Duffy*, 152 Ohio St. 139, 87 N.E.2d 342 (1949), paragraph one of the syllabus ("A statute should be given that construction, unless such is prohibited by the letter of the statute, which will accord with common sense and reason and not result in absurdity or great inconvenience").

**{¶ 32}** Under this standard, the relevant evidence submitted includes the board of trustees' notice of decision, public-hearing notices and meeting agendas related to Tam O'Shanter's rezoning proposal, and, possibly, the testimony of the Jackson Township fiscal officer at the board-of-elections hearing. On the whole, this evidence does not support relators' claim that the board of elections abused its

discretion in finding that the amendment was not known by a name that included the words "Tam O'Shanter."

{¶ 33} The strongest evidence favoring relators is the testimony of the township's fiscal officer, Randy Gonzalez. He referred to the amendment as "[t]he Tam O'Shanter rezone" and testified as follows:

> Q. So throughout the entire process, was this rezoning always known as the Tam O'Shanter rezoning?
>
> A. Yes.
>
> Q. Would you consider that to be the name by which the proposed rezoning was known?
>
> A. Absolutely.

But in confirming that the proposal was "always known as the Tam O'Shanter rezoning," Gonzalez still did not answer the pressing question—known by whom? We hold that the board of elections acted within its discretion when it assigned greater weight to the documents produced by the township, rather than to Gonzalez's personal opinion.

{¶ 34} As explained above, the documents do not support relators' argument. The board of trustees' notice of decision refers to "Tam O'Shanter" only once, under the words "Property Owner." And although the public-hearing notices and agendas also refer to "Tam O'Shanter Company," they do so only when identifying it as the property owner or applicant. The notice of decision and hearing notices consistently refer to the zoning proposal itself as "Amendment 630-17."

{¶ 35} Relators argue that R.C. 519.12(H) required the referendum petition to furnish some version of the name "Tam O'Shanter" to notify electors of the subject of the petition. But in seeking this holding, relators are not asking us to apply R.C. 519.12(H) as written. In effect, they ask us to add language to the

statute—to require not just the name of the amendment to be furnished but also the name of the property owner or applicant. We decline this invitation to alter the statutory language. *See Columbia Res.*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, at ¶ 32.

{¶ 36} We conclude, therefore, that relators have not shown that the board of elections abused its discretion or misapplied the law when it found that the referendum petition provided "the name by which the amendment is known."

"[A] brief summary of its contents"

{¶ 37} Relators also argue that the referendum petition did not satisfy the brief-summary requirement of R.C. 519.12(H) because the summary did not identify "Tam O'Shanter" as the owner of the property subject to the referendum. "The overriding purpose of the summary is to fairly and accurately present the question or issues to be decided so as to ensure that voters can make free, intelligent, and informed decisions." *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 7. A petition summary "must be accurate and unambiguous" and not omit material information. *Id*. at ¶ 7, 8.

{¶ 38} In *State ex rel. C.V. Perry & Co. v. Licking Cty. Bd. of Elections*, 94 Ohio St.3d 442, 445, 764 N.E.2d 411 (2002), we held that a summary complied with R.C. 519.12(H) when it contained wording that was substantially the same as the language used in the zoning-amendment resolution itself. We explained that we would not penalize the township electors for "summarizing the resolution [in their referendum petition] with substantially the same wording as the resolution itself." *Id.*

{¶ 39} Like the petition in *C.V. Perry*, the summary at issue here contained wording that is substantially the same as the language of the notice of decision announcing approval of Amendment 630-17. The summary specified the proposed zoning change from "R-R Rural Residential District" to "B-3 Commercial Business

District," identified the size and location of the property "at the southeast corner of Everhard and Fulton," and repeated the exact wording of the board of trustees' decision. The language, therefore, accurately reflected the language of the proposed zoning amendment.

{¶ 40} Although it is true that the petition's summary did not include the name of the property owner, relators provide no legal support for their argument that the omission of this information would mislead or confuse electors. The summary identified the size and location of the land at issue, and it specified the proposed zoning change. Relators have not shown that electors needed additional information about the owner's identity to make a "free, intelligent, and informed decision[]," *Jacquemin*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, at ¶ 7, regarding the petition.

{¶ 41} For the foregoing reasons, we deny relators' motion to strike, dismiss their claim for a writ of mandamus, and deny their claim for a writ of prohibition.

Claim for writ of mandamus dismissed

and claim for writ of prohibition denied.

O'CONNOR, C.J., and KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, FISCHER, and DEWINE, JJ., concur in judgment only.

_____

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, Derek S. Clinger, and Ben F.C. Wallace; and Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Terry A. Moore, Aletha M. Carver, and Owen J. Rarric, for relators.

John D. Ferrero, Stark County Prosecuting Attorney, and Deborah A. Dawson and Stephan P. Babik, Assistant Prosecuting Attorneys, for respondent.

_____